UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MACDERMID PRINTING SOLUTIONS, LLC., <br><br> Plaintiff, <br><br> v. <br><br> CLEAR STAMP, INC., CORIUM, INC., CHEMENCE, INC., and CRAFFITI, INC.; <br><br> Defendants. | Civil Action No. 3:12-CV-259 JVB |

**OPINION AND ORDER**

Plaintiff, MacDermid Printing Solutions, LLC., sued Clear Stamp, Inc.; Corium, Inc.; Chemence, Inc.; and Craffiti, Inc. Plaintiff seeks relief for a breach of contract by Clear Stamp. Plaintiff also claims tortious interference with contract and fraudulent conveyance by Corium, Chemence, and Craffiti.

Defendant Craffiti has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over it. Craffiti contends that it does not have minimum contacts with Indiana. The Court disagrees and DENIES Craffiti's Motion to Dismiss.

Defendants Chemence and Craffiti have jointly filed a Motion to Dismiss for Improper Venue under 28 U.S.C. § 1391(b). The Court finds that venue is proper under either 28 U.S.C. §§ 1391(b)(1) or (2) and DENIES their motion.

**A.     Complaint**

**(1)     *Breach of Contract against Clear Stamp***

Plaintiff and Clear Stamp entered into a three-year contract on August 10, 2010, that provided for Clear Stamp to purchase 90% of its material requirements from Plaintiff. (Sec. Am. Compl. ¶ 18). Plaintiff alleges that it supplied materials to Clear Stamp, but Clear Stamp failed to pay for those materials and breached the contract. (*Id*. at ¶ 20). Plaintiff further alleges that Clear Stamp continues to operate but is not buying 90% of its photopolymer materials from Plaintiff. (*Id*. at ¶ 21). Clear Stamp now buys its materials from Plaintiff's direct competitor and fellow defendant, Chemence. (*Id*.)

**(2)     *Tortious Interference with Contract against Corium, Chemence, and Craffiti***

Plaintiff alleges that Corium, Chemence, and Craffiti knew that Clear Stamp was bound by the purchasing contract, and that they intentionally induced Clear Stamp to breach the contract. (*Id*. at ¶ 25–26). Plaintiff asserts that the three defendants induced Clear Stamp to breach the agreement by offering to assume the liability that would be owed to Plaintiff in the event of a breach. (*Id.* at ¶ 28). Clear Stamp then sold some of its assets and liabilities, including the liability owed to Plaintiff, to Corium, Chemence's conspirator. (*Id*. at ¶ 29). Plantiff maintains that Corium, Chemence, and Craffiti negotiated this sale in concert for the purpose of depriving Plaintiff's rights under the agreement and to gain an unfair advantage against its direct competitor. (*Id*. at ¶ 32).

In support of this conspiracy claim, Plaintiff asserts that officers of all three companies participated in the negotiations for the sale of the assets from Clear Stamp to Corium and that at least one of those officers, Hugh V. Cooke, was an officer or director of Corium, Chemence, and Craffiti at different stages leading up to and during this litigation. (*Id*. at ¶ 33). Plaintiff contends that without the tortious interference of the contract, Clear Stamp would have met its contractual obligations. (*Id*. at ¶ 35).

**(3)**     *Fraudulent Conveyance against Clear Stamp, Corium, Chemence, and Craffiti*

Plaintiff claims that the conveyance of assets from Clear Stamp to Corium, Corium to Chemence, and then from Chemence to Craffiti constituted a fraudulent conveyance in violation of Indiana Code § 32-18-2-14 or Indiana Code § 32-18-2-15. Plaintiff asserts that the conveyance of assets between all of the defendants was:

- "made with the "intent to hinder, delay, and/or defraud [Plaintiff]";
- "not made for reasonably equivalent value and Clear Stamp was engaged in a business for which the remaining assets were unreasonably small in relation to the business or transaction";
- "not made for reasonably equivalent value and Clear Stamp intended to incur, believed or reasonably should have believed that it would incur debts beyond its ability to pay as those debts became due and/or";
- "not made for reasonably equivalent value and Clear Stamp was insolvent at the time and/or became insolvent as a result of the transfer"

(*Id*. at ¶ 38).

In support of that claim, plaintiff cites to emails between the parties. Plaintiff recites an email to Clear Stamp indicating that their intention was to leave Clear Stamp a "non-trading shell company" that would bring Clear Stamp's requirement to purchase under the contract to zero. (*Id*. at ¶ 39). The sale would relieve Clear Stamp of one and a half years' worth of duties to Plaintiff. Plaintiff cites to another email from a representative of Corium to Clear Stamp, with representatives of the other defendants carbon copied, "revealing the defendants' plan to stagger payments of money long overdue to Plaintiff and to hold off on the final payment as long as we can." (*Id*. at ¶ 40).

Plaintiff claims that Clear Stamp was a healthy business generating sales of over $1.6 million per year but the sale of the Clear Stamp assets was only for $350,000, with most of the payments deferred. (*Id*. at ¶ 41–42). In total, less than $200,000 of the money was actually paid to Clear Stamp. (*Id*. at ¶ 45). Most importantly, Plaintiff declares that many of the liabilities purchased under the sale, including the money owed to Plaintiff, were never paid. (*Id*.at ¶ 46). After the sale, Clear Stamp was left insolvent and unable to pay its bills. (*Id*. at ¶ 47).

Corium held the Clear Stamp assets for only a few months before Chemence purchased the assets through a public sale. (*Id*. at ¶ 50). The sale happened after Corium had been served with a complaint in this action. (*Id*.) Chemence held the assets for only a short period of time before they were transferred further to Craffiti, a corporation that Plaintiff believes was created for the sole purpose of receiving the fraudulently transferred assets. (*Id*. at ¶ 52). Because of this series of transactions, Plaintiff contends that Corium and Craffiti were under Chemence's control at all times relevant to this lawsuit and that the assets were fraudulently conveyed in a preconceived plan. (*Id*. at ¶ 54).

B.     Personal jurisdiction

**(1)**     *Legal Standard*

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). Indiana's courts assert jurisdiction over defendants in any way that is consistent with the Federal Due Process Clause. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

The Due Process Clause requires that defendants have minimum contacts with the forum state. *Int'l Shoe Corp v. Washington*, 326 U.S. 310, 316 (1945). That is, they must purposefully direct their business activities at the state or at least purposefully avail themselves of the benefits of that state. *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). In almost all cases, there must be a direct link from the defendant's activities to the forum state. And usually, one corporation's minimum contacts "are not attributed to a related corporation for the purpose of establishing jurisdiction." *LinkAmerica*, 857 N.E.2d at 968. But minimum contacts are transferred between related corporations in three scenarios:

- when a corporation uses another in such a way that an agency relationship can be perceived;
- when a corporation has control over another beyond that which is typically associated with common ownership and directorship; or
- when the related corporation is simply an empty shell.

*Reed v. Reed*, 980 N.E.2d 277, 304–305 (Ind. 2012).

In the complaint, personal jurisdiction is presumed unless the defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). *Purdue Research*, 338 F.3d 773, 782. In such cases, the burden shifts to the plaintiff to demonstrate a *prima facie* case for jurisdiction if the court is ruling solely on written submissions. *Id.* But, "if a defendant submits evidence in opposition to a finding of personal jurisdiction, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *1st Source Bank v. Vill. of Stevensville*, No. 3:11-CV-205TOLS, 2012 WL 5304204, 1 (N.D. Ind. Oct. 25, 2012) (*quoting Purdue Research*, 338 F.3d at 783).

The court must accept as true any unrefuted facts contained in the submitted evidence. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1027 n.1 (7th Cir. 2009). But, if the evidence the defendant submits does not refute the plaintiff's theory of jurisdiction, there is no duty on the plaintiff to submit evidence in support of that theory; the plaintiff needs only to establish a *prima facie* case for personal jurisdiction on the basis of the allegations contained in the complaint.

**(2)** *Analysis*

Defendant Craffiti argues that this Court lacks personal jurisdiction, because Craffiti does not have minimum contacts with the State of Indiana. Craffiti has submitted an affidavit (DE 49-1) from Hugh V. Cooke, the company's CEO, stating that:

- "Craffiti has never transacted any business or performed any character of work or service in the state of Indiana";
- "Craffiti has never contracted to supply goods, food, services, or manufactured products in the state of Indiana";

- "Craffiti has never used, possessed, or had an interest in real property in the state of Indiana";
- "Craffiti has never owned or leased any real estate in Indiana, had an office, a registered agent for service of process, a bank account, a post office box, or a telephone listing in Indiana";
- "Craffiti has never earned any income in Indiana or paid Indiana income taxes, payroll taxes or franchise fees.";
- "None of Craffiti's directors are residents of Indiana; nor are Craffiti's activites controlled by persons or entities located in Indiana"; and
- "Other than the present litigation, Craffiti has never been a party to any suit in any court in Indiana".

(Decl. of Hugh V. Cooke ¶¶ 4–10).

The Court accepts all of these declarations as true. And normally, these declarations would be enough to rebut a finding of personal jurisdiction without additional evidence submitted by Plaintiff. But Plaintiff's theory of personal jurisdiction, to which it only needs to establish a *prima facie* case, relies on the transfer of minimum contacts between the defendants.

The Court finds that Plaintiff has sufficiently pled a *prima facie* case for personal jurisdiction. The allegations and all reasonable inferences contained in the complaint, accepted as true by the Court, are sufficient to support a finding that the relationship between Chemence and Craffiti could be construed as that of a principal and an agent; or in the alternative, that Craffiti is merely an empty shell created to hold Clear Stamp's assets.

Plaintiff submits that officers and directors of Chemence now work for Craffiti. Plaintiff cites to emails addressed to Clear Stamp in which members of all three defendants were copied.

Plaintiff declares that Craffiti was created for the sole purpose of receiving Clear Stamp's assets. Plaintiff points out that Craffiti was created after this lawsuit began, and then shortly after, Clear Stamp's assets were sold to Craffiti. None of the statements made by Hugh V. Cooke, on behalf of Craffiti, rebut the inferences drawn from Plaintiff's complaint. Therefore, the minimum contacts that Chemence has with this district are transferred to Craffiti for the purpose of establishing personal jurisdiction in the pleadings. For those reasons, the Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**C.     Venue**

Defendants Chemence and Craffiti have filed a Motion to Dismiss for Improper Venue. Venue is proper in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction respect to such action." 28 U.S.C. § 1391(b)(1)–(3).

For the purposes of § 1391(b)(1), a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction". 28 U.S.C. § 1391(c)(2). Therefore, if a Court has personal jurisdiction over any defendant and the state has personal jurisdiction over all of the defendants, venue is proper.

The Court has already found, in this order, that plaintiff established a *prima facie* case that this Court has personal jurisdiction over Craffiti. No other defendants have challenged personal jurisdiction[1]; therefore, venue is proper under § 1391(b)(1).

Section 1391(b)(2) deems venue to be proper when a substantial part of the acts that gave rise to the lawsuit occurred in the judicial district. The court in *J.B. Custom, Inc. v. Amadeo Rossi, S.A.* found that the substantiality of the events is "more of a qualitative, rather than a quantitative inquiry." 1:10-CV-326, 2011 WL 124509, at *4 (N.D. Ind. Jan. 13, 2011). Even in cases where a majority of the events took place outside of the district, if the most important and substantive events occurred in the district, venue is proper under § 1391(b)(2). *See U.S. Sch. of Golf, Inc. v. Biltmore Golf, Inc.*, 1:05-CV-0313, 2005 WL 3022005, at *8 (S.D. Ind. Nov. 10, 2005). "To consider events substantial under the statute, it is sufficient to establish that events occurring in the forum district were part of the "historical predicate" of the claim." *Id* at 8 (*citing Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)).

The origin of this lawsuit was an alleged breach of contract by Clear Stamp, a corporation located in LaPorte, Indiana. Plaintiff alleges that this breach was induced by the other defendants. Furthermore, Plaintiff asserts that the assets were fraudulently conveyed outside of this district to corporations located in other states. This combination of events is the "historical predicate" of the lawsuit. And under a qualitative analysis, the Court finds that the most important events took place in this district. Therefore, the Court finds venue to be proper under § 1391(b)(2).

There is no need for the Court to analyze this claim under § 1391(b)(3) because it finds that venue is proper under both § 1391(b)(1) and § 1391(b)(2).

---

[1] Corium filed two motions to dismiss for lack of jurisdiction (DE 20, 22), but those motions were later withdrawn.

D.     **CONCLUSION**

For those reasons, the Court—

- DENIES Defendant Craffiti's Motion to Dismiss for Lack of Personal Jurisdiction (DE 49); and

- DENIES Defendants' Craffiti and Chemence's Motion to Dismiss for Improper Venue (DE 53).

SO ORDERED on June 21, 2013.

    s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge